## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF KANSAS

| | |
|---|---|
| SCOTT COATES, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. _____** |
| ) | |
| GEORGE D. REICHERT, CPA, ) | **JURY TRIAL DEMANDED** |
| ) | |
| and ) | |
| ) | |
| RPR FINANCIAL, P.A. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

Plaintiff Scott D. Coates, M.D., alleges the following in his Complaint against Defendants George D. Reichert, CPA, and RPR Financial, P.A.:

## THE PARTIES

1.      Dr. Coates is an individual citizen of the State of Missouri. Dr. Coates is a physician practicing general surgery.

2.      Mr. Reichert is an individual citizen of the State of Kansas. Since 2010, Mr. Reichert has been licensed as a Certified Public Accountant by the Kansas Board of Accountancy.

3.      RPR Financial, P.A. ("RPR Financial"), is a professional association incorporated in the State of Kansas, with its principal place of business in Chanute, Neosho County, Kansas. RPR Financial may be served with process through its registered agent George Reichert, at 740 North Garfield Avenue, Chanute, Kansas 66720.

4.      At all relevant times, Mr. Reichert was an agent and/or employee of RPR Financial. All acts and omissions of Mr. Reichert were performed within the scope of his duties as an

1

accountant and as an employee and/or agent of RPR Financial. As such, RPR Financial is vicariously liable for Mr. Reichert's acts and omissions.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 23 U.S.C. § 1332(a) because this is a civil action between parties whose citizenship is diverse, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6.      Defendant Reichert is subject to personal jurisdiction in Kansas and in the United States District Court of Kansas because he is a resident of the State of Kansas.

7.      Defendant RPR Financial is subject to personal jurisdiction in Kansas and in the United States District Court of Kansas as it is incorporated in and has its principal place of business in the State of Kansas.

8.      Additionally, this Court may exercise personal jurisdiction over Defendants under K.S.A. 60-308(b) in that Defendants transacted business and committed tortious acts in the State of Kansas.

9.      Venue is proper in this Court under 28 U.S.C. § 1391. A substantial part of the events giving rise to the claim occurred in the State of Kansas.

## COMMON FACTUAL ALLEGATIONS

10.      Dr. Coates has been a licensed physician and general surgeon since 1999. Dr. Coates is board certified by the American Board of Surgeries, a fellow of the American College of Surgeons, and trained in robotic-assisted surgery. Since 2001, Dr. Coates has practiced in hospitals and other facilities in Southeast Kansas.

11.      Ashley Clinic, LLC operates a multi-specialty clinic that offers family medicine, general surgery, obstetrics and gynecology, pediatric, and urology services to patients.

OP 3340698.1

12.    During all relevant times, Ashley Clinic, a Kansas professional limited liability company, has been owned by physicians, individually or through a professional corporation, who are members of the limited liability company.

13.    While Ashley Clinic is owned by physicians, not all physicians who are affiliated with Ashley Clinic are owners or members. Some of the physicians are employees who have no ownership interest.

14.    After going to college, medical school, residency, and a two-year stint in Lawrence, Kansas, Dr. Coates returned to his hometown, Chanute, in 2001 to work for Ashley Clinic.

15.    Ashley Clinic did not pay for any part of Dr. Coates' education or training.

16.    Dr. Coates was hired as an employee of Ashley Clinic in 2001.

17.    As an employee, Ashley Clinic paid Dr. Coates a salary, including vacation and sick leave, and paid for his malpractice insurance, health insurance, disability insurance, licensure expenses, and continuing medical education.

18.    The employment agreement between Ashley Clinic and Dr. Coates confirmed their desire for Dr. Coates to become an owner of Ashley Clinic, at which time he would no longer be employed by Ashley Clinic.

19.    Dr. Coates became a member of Ashley Clinic by 2004. At that point, Dr. Coates was an owner and no longer an employee of Ashley Clinic.

20.    When Dr. Coates became a member, he agreed to the Ashley Clinic, L.L.C. Operating Agreement effective July 1, 1999 ("1999 Operating Agreement"). The 1999 Operating Agreement defined the relationship between Ashley Clinic and the members, and the relationship between the individual members. It governed the management and operation of Ashley Clinic, division of profits, allocation of expenses, vacation, and days off.

3

21.     As required by the 1999 Operating Agreement, Dr. Coates purchased his proportionate share of Ashley Clinic with a buy-in.

22.     After Dr. Coates became a member – since at least 2004 – expenses associated with his practice were borne by him through allocation of Ashley Clinic overhead, and directly impacted his income.

23.     Ashley Clinic is a pass-through organization. The expenses of Ashley Clinic are borne by the members because the members only receive compensation through distribution of profits after payment of expenses.

24.     Ashley Clinic has approximately 95 employees and pays them an hourly wage or salary.

25.     Dr. Coates' income from Ashley Clinic was self-employment income. Throughout the time Dr. Coates was a member of Ashley Clinic, he did not receive an hourly wage or salary.

26.     Ashley Clinic and its members, including Dr. Coates, executed an Amended and Restated Operating Agreement of Ashley Clinic, L.L.C., effective January 1, 2016 ("2016 Operating Agreement"). That agreement defined the rights and obligations of the members of Ashley Clinic as governed by (in order of importance) the Kansas Revised Limited Liability Company Act (the "Act"), the LLC's Articles of Organization, the 2016 Operating Agreement, and, lastly, the optional provisions of the Act.

27.     Dr. Coates continued as a member and owner of Ashley Clinic after execution of the 2016 Operating Agreement.

28.     Dr. Coates left Ashley Clinic on August 16, 2019.

OP 3340698.1

29.     Beginning in 2005, Mr. Reichert was engaged by Ashley Clinic and several of its individual members, including Dr. Coates, to provide professional tax reporting and preparation services.

30.     Mr. Reichert was first engaged to provide services to Ashley Clinic and Dr. Coates through Stafford & Westervelt. Mr. Reichert formed RPR Financial, P.A., and purchased all or part of Stafford & Westervelt's business, including client Ashley Clinic and Dr. Coates.

31.     In 2016, Mr. Reichert, with RPR Financial, became Ashley Clinic's company accountant and served in that role at all times relevant to the claims asserted in this Petition.

32.     From 2016 through 2019, while serving as Ashley Clinic's company accountant, Mr. Reichert, as head CPA at RPR Financial, simultaneously acted as Dr. Coates' personal accountant, including preparing and signing Dr. Coates' individual tax returns.

**The Ashley Clinic Litigation**

33.     On August 19, 2019, Dr. Coates started working for Labette Health, a hospital located in Parsons, Kansas. Dr. Coates started seeing patients in clinic and performing surgeries as an employee of Labette Health on or around August 26, 2019.

34.     On August 15, 2019, Ashley Clinic filed a Petition for Injunctive Relief and Damages against Dr. Coates and Labette Health in the District Court of Neosho County, Kansas. *See Ashley Clinic, LLC v. Scott Coates, M.D. and Labette County Medical Center d/b/a Labette Health*, Case No. 2019-CV-00037 (the "Case").

35.     The subject of the Case was Dr. Coates' contractual obligations to Ashley Clinic and the enforceability of a non-compete provision in an employment agreement.

36.     Ashley Clinic designated Mr. Reichert to provide expert opinion testimony in the Case.

OP 3340698.1

37. Mr. Reichert prepared an expert report dated December 31, 2020, supporting Ashley Clinic's claims against Dr. Coates. Specifically, Mr. Reichert offered the opinion that Dr. Coates was an employee of Ashley Clinic while also a member and owner, and that Dr. Coates received a salary and bonus as an employee. Yet, Mr. Reichert prepared and signed Dr. Coates' personal tax returns stating that Dr. Coates' income from Ashley Clinic was not wages, but rather self-employment income.

38. In Mr. Reichert's expert report in the Case, Mr. Reichert did not acknowledge the personal accounting services or tax preparation services he provided to Dr. Coates.

39. On January 12, 2021, Ashley Clinic deposed Mr. Reichert and Mr. Reichert gave testimony against Dr. Coates in the Case.

40. On January 21, 2021, Dr. Coates filed a Motion to Exclude Mr. Reichert as Ashley Clinic's Expert Witness in the Case.

41. After holding a hearing on the issue, the District Court of Neosho County denied Dr. Coates' Motion to Exclude Mr. Reichert.

42. On August 26, 2021, Mr. Reichert testified as a witness for Ashley Clinic against Dr. Coates at trial.

43. During his testimony, Mr. Reichert acknowledged that he was Dr. Coates' personal accountant from 2016 through sometime in 2019.

44. Throughout Mr. Reichert's testimony, he continually placed at issue the accounting advice provided to Dr. Coates and the actions taken in preparing and submitting tax returns for Dr. Coates, all performed by Mr. Reichert or other agents of RPR Financial under Mr. Reichert's supervision. Mr. Reichert advocated for damages against Dr. Coates based on actions occurring,

6

decisions made, and advice given during the time he provided professional accounting and tax services to Dr. Coates.

45.     Mr. Reichert also testified as to the conflict of interest apparent in his role as a retained expert witness against Dr. Coates. One of Mr. Reichert's primary expert conclusions was that Dr. Coates was an employee of Ashley Clinic at all times. In providing that testimony, Mr. Reichert placed at issue the professional accounting advice given to, and actions taken on behalf of, Dr. Coates.

46.     Communications between Dr. Coates and Mr. Reichert were privileged under Kansas law, and Mr. Reichert invaded that privilege by testifying against Dr. Coates. By doing so, Dr. Coates was faced with the decision of protecting the privileged nature of the communications with Mr. Reichert or waiving that privilege to further highlight Mr. Reichert's already apparent conflict.

47.     On August 30, 2021, the jury rendered a verdict in favor of Ashley Clinic, and against Dr. Coates, for breach of an employment agreement, awarding Ashley Clinic $463,476. The jury's verdict and award were predicated on Mr. Reichert's testimony against Dr. Coates. The Court entered its judgment on February 8, 2022, against Dr. Coates for the amount awarded by the jury.

48.     Under the American Institute of Certified Public Accountants, Inc. ("AICPA") Code of Professional Conduct ("Code of Conduct"), which the state of Kansas adopted in K.A.R. 74-5-2b, certified public accountants owe their clients duties of due care and confidentiality, and to be free from conflicts of interest.

49.     K.A.R. 74-5-101 requires that certified public accountants "shall be independent in the performance of professional services."

OP 3340698.1

50.    K.A.R. 74-5-102 similarly requires certified public accountants to "maintain objectivity" and "be free of conflicts of interest."

51.    Mr. Reichert failed to remain independent, maintain objectivity, and be free of conflicts of interests when he prepared expert reports and testified against Dr. Coates in the Case.

52.    K.A.R. 74-5-301 states that "A certified public accountant . . . shall not disclose any confidential client information without the consent of the client."

53.    At trial in the Case, Mr. Reichert explicitly acknowledged that he used the conversations he was privy to and the accounting work he did for Dr. Coates to form his expert opinions on behalf of Ashley Clinic against Dr. Coates.

54.    According to K.S.A. 1-401(b), licensed certified public accountants in Kansas are not permitted to be examined in a judicial proceeding "without the consent of the client as to any communication made by the client to the certified public accountant in person or through the media of books of account and financial records, or as to advice, reports, or working papers given or made thereon in the course of professional employment."

55.    Mr. Reichert violated K.S.A. 1-401(b) when he testified against his client, Dr. Coates, in favor of Ashley Clinic in the Case and failed to secure Dr. Coates' consent as to the use of their communications made in the course of Mr. Reichert's professional employment.

56.    Mr. Reichert's testimony and expert opinions against Dr. Coates have caused and will continue to cause damages to Dr. Coates.

## COUNT I—BREACH OF FIDUCIARY DUTY

57.    Plaintiff incorporates the previous paragraphs as if fully set forth here.

58.    As the certified public accountant for Dr. Coates, a fiduciary relationship existed between Dr. Coates and Mr. Reichert.

8

OP 3340698.1

59.     Mr. Reichert breached fiduciary duties owed to Dr. Coates in a variety of ways, including, but not limited to:

      a.    Testifying against Dr. Coates in the Case;

      b.    Preparing expert reports against Dr. Coates in the Case;

      c.    Using knowledge, information, and data gathered from Dr. Coates in Mr. Reichert's role as Dr. Coates' certified public accountant in testimony and expert reports against Dr. Coates;

      d.    Assisting one client (Ashley Clinic) in its pursuit of legal claims against another client (Dr. Coates);

      e.    Failing to comply with Kansas statutes and regulations governing the accounting profession.

60.     As a direct and proximate result of Mr. Reichert's breach of fiduciary duty, Dr. Coates was damaged.

61.     By acting as an expert witness against his former client, Mr. Reichert acted in a reckless and wanton manner, entitling Dr. Coates to punitive damages. Mr. Reichert was aware, or should have been aware, of his duties and obligations to Dr. Coates, and acted in a way clearly contrary to those duties and obligations.

62.     Dr. Coates respectfully requests that this Court enter judgment in its favor and against Mr. Reichert in an amount exceeding $75,000, plus punitive damages, pre- and post-judgment interests, costs and other relief this Court deems just and proper.

## COUNT II—ACCOUNTING NEGLIGENCE/MALPRACTICE

63.     Plaintiff incorporates the previous paragraphs as if fully set forth here.

64.     K.S.A. 1-402 establishes liability for professional negligence when a person authorized as a certified public accountant in Kansas causes damages resulting from acts, omissions, decisions, or other conduct amounting to negligence in the rendition of their professional accounting services.

9

65.    Dr. Coates directly engaged Mr. Reichert to perform professional accounting services beginning in 2005.

66.    Mr. Reichert knew at the time of the engagement that his professional accounting services would be made available to Dr. Coates and that Dr. Coates would rely upon his professional accounting services.

67.    Mr. Reichert, a certified public accountant and someone who held himself out to be such, had a duty to exercise that degree of skill, care, knowledge, and judgment usually exercised by members of his profession.

68.    Mr. Reichert owed certain duties to Dr. Coates, including the duty of due care, confidentiality, and to be free from conflicts of interest.

69.    In preparing an expert report and providing testimony against Dr. Coates in which he used knowledge, information, and data he gathered from Dr. Coates in his role as his certified public accountant, Mr. Reichert breached his duties to Dr. Coates.

70.    As described herein, Mr. Reichert failed to exercise the skill and care normally possessed by members of the accounting profession. As a direct and proximate result of Mr. Reichert's malpractice and breaches, Dr. Coates suffered damages in an amount to be proven at trial in this matter.

71.    By acting as an expert witness against his former client, Mr. Reichert acted in a reckless and wanton manner, entitling Dr. Coates to punitive damages. Mr. Reichert was aware, or should have been aware, of his duties and obligations to Dr. Coates, and acted in a way clearly contrary to those duties and obligations.

OP 3340698.1

72.    Dr. Coates respectfully requests that this Court enter judgment in its favor and against Mr. Reichert in an amount exceeding $75,000, plus punitive damages, pre- and post-judgment interests, costs and other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Dr. Coates hereby demands a trial by jury on all claims and defenses so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas, as the place of trial, and requests that the Court direct trial at such place.

Dated: October 10, 2022

Respectfully submitted,

SPENCER FANE LLP

*s/ Mark A. Cole*
Mark A. Cole, KS #25349
Blane R. Markley, KS #23262
6201 College Boulevard, Suite 500
Overland Park, KS 66211
Tel: (913) 345-8100
Fax: (913) 345-0736
mcole@spencerfane.com
bmarkley@spencerfane.com

Daniel Blegen, KS #19092
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Tel: (816) 474-8100
Fax: (816) 474-3216
dblegen@spencerfane.com

*Attorneys for Plaintiff*
*Scott Coates, M.D.*

OP 3340698.1