## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SCOTT COATES, M.D.,

      *Plaintiff,*

vs.                            Case No. 22-2411-EFM-KGG

GEORGE D. REICHERT, CPA, et al.,

      *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Scott Coates, M.D., filed suit against Defendants George D. Reichert and RPR Financial, P.A. ("RPR Financial") asserting two claims:  breach of fiduciary duty and accounting negligence/malpractice.   Defendants have filed a Motion to Dismiss (Doc. 5) asserting that Plaintiff fails to state a claim against them.  For the reasons stated in more detail below, the Court denies Defendants' motion.

### I.      Factual and Procedural Background[1]

Plaintiff Dr. Coates is a physician practicing general surgery.  Defendant George Reichert is a certified public accountant ("CPA") and has been licensed since 2010.  Defendant RPR

---

[1] The facts are taken from the allegations within Plaintiff's Complaint and are considered true for the purposes of this order.

Financial is a professional association incorporated in Kansas, with its principal place of business in Chanute, Kansas.  Reichert was an agent and/or employee of RPR Financial.

Plaintiff has been a licensed physician and general surgeon since 1999.  Since 2001, he has practiced in hospitals and other facilities in southeast Kansas.  Ashley Clinic, LLC operates a multi-specialty clinic in Chanute that offers family medicine, general surgery, obstetrics and gynecology, pediatric, and urology services to patients.  Ashley Clinic is a professional limited liability company.  It is owned by physicians, individually or through a professional corporation, who are members of the limited liability company.  Not all physicians affiliated with Ashley Clinic, however, are owners or members.  Some physicians are employees who have no ownership interest.

Plaintiff was hired as an employee of Ashley Clinic in 2001.  As an employee, Ashley Clinic paid Plaintiff a salary, including vacation and sick leave, and paid for malpractice insurance, health insurance, disability insurance, licensure expenses, and continuing medical education.  The employment agreement between Plaintiff and Ashley Clinic confirmed Plaintiff's desire to become an owner of Ashley Clinic, at which time he would no longer be employed by Ashley Clinic.

By 2004, Plaintiff became a member of Ashley Clinic and was no longer an employee.  When Plaintiff became a member, he agreed to Ashley Clinic's 1999 Operating Agreement, which defined the relationship between Ashley Clinic and its members.  It governed the management and operation, division of profits, allocation of expenses, vacation, and days off.  Plaintiff purchased his proportionate share with a buy-in.

Ashley Clinic is a pass-through organization.  The expenses of Ashley Clinic are paid by the members because the members only receive compensation through distribution of profits after payments of expenses.  Ashley Clinic has approximately 95 employees and pays them an hourly

wage or salary.  Plaintiff's income was self-employment income because he did not receive an hourly wage or salary.

Ashley Clinic and its members, including Plaintiff, executed an Amended Operating Agreement, effective January 1, 2016, defining the rights and obligations of the members.  Plaintiff continued as a member and owner after the execution of that agreement.

In 2005, Reichert was engaged by Ashley Clinic, and several of its individual members, including Plaintiff, to provide professional tax reporting and preparation services.  Reichert was first engaged to provide services through Stafford & Westervelt.  Reichert formed a different company, RPR Financial, and purchased all or part of Stafford & Westervelt's business, including client Ashley Clinic and Plaintiff.

In 2016, Reichert, with RPR Financial, became Ashley Clinic's company accountant. From 2016 through 2019, while serving as Ashley Clinic's company accountant, Reichert simultaneously acted as Plaintiff's personal accountant.  Reichert prepared and signed Plaintiff's individual tax returns.

On August 16, 2019, Plaintiff left Ashley Clinic. On August 19, Plaintiff began working for Labette Health, a hospital located in Parsons, Kansas.  He started seeing patients in the clinic and performing surgeries as an employee of Labette Health on or around August 26.

On August 15, 2019, Ashley Clinic filed a Petition for Injunctive Relief and Damages against Plaintiff and Labette Health in the District Court of Neosho County, Kansas.  The subject of the case was Plaintiff's contractual obligations to Ashley Clinic and the enforceability of a non-compete provision in an employment agreement.  Ashley Clinic designated Reichert to provide expert opinion testimony in the case.

Reichert prepared an expert report, dated December 31, 2020, supporting Ashley Clinic's claims against Plaintiff.  He offered the opinion that Plaintiff was an employee of Ashley Clinic while also a member and owner and that Plaintiff received a salary and bonus as an employee. Reichert, however, prepared and signed Plaintiff's personal tax returns stating that Plaintiff's income from Ashley Clinic was not wages but was instead self-employment income.  Reichert's expert report did not acknowledge the personal accounting services or tax preparation services that he provided to Plaintiff.

Plaintiff sought to exclude Reichert's testimony at trial as an expert witness, but his motion was denied.  On August 26, 2021, Reichert testified as a witness for Ashley Clinic against Plaintiff at trial.  During the testimony, Reichert acknowledged that he was Plaintiff's personal accountant from 2016 through sometime in 2019.  Throughout Reichert's testimony, he placed at issue the accounting advice provided to Plaintiff and the actions taken in preparing and submitting tax returns.  In addition, Reichert advocated for damages against Plaintiff based actions and decisions made during the time he provided professional accounting and tax services to Plaintiff.

During trial, Reichert also testified as to the conflict of interest in his role as a retained expert witness against Plaintiff.  One of Reichert's primary expert conclusions was that Plaintiff was always an employee of Ashley Clinic.  At trial, Reichert acknowledged that he used conversations he was privy to and the accounting work he did for Plaintiff to form his expert opinion on behalf of Ashley Clinic against Plaintiff.

Plaintiff alleges that communications between him and Reichert were privileged, and Reichert invaded that privilege by testifying against Plaintiff.  Plaintiff claims he was faced with the decision of protecting the privileged nature of the communications with Reichert or waiving that privilege to highlight Reichert's apparent conflict of interest.  On August 30, 2021, the jury

-4-

found in favor of Ashley Clinic, and against Plaintiff, for breach of an employment agreement, awarding Ashley Clinic $463,476. Judgment was entered on February 8, 2022.

Plaintiff filed suit in this Court on October 10, 2022, asserting two claims against Reichert and RPR Financial. He claims that Reichert breached his fiduciary duty to him by testifying against him; preparing expert reports against him; using knowledge that Reichert gained in his CPA role against him; assisting one client (Ashley Clinic) in its pursuit of a legal claim against another client (him); and by failing to comply with Kansas statutes and regulations governing the accounting profession. Plaintiff also asserts an accounting negligence/malpractice claim against Defendants asserting that Reichert gathered knowledge from Plaintiff as his CPA and used that information when preparing an expert report and testifying against Plaintiff.

Defendants have now filed a Motion to Dismiss.

## II.   Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

of claims as well the grounds on which each claim rests.[5]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[8]

### III.    Analysis

Defendants assert several arguments for dismissal.[9]  First, they contend that Plaintiff consented to Reichert's adverse testimony.  Next, they state that Reichert did not breach a fiduciary duty because a former accountant owes no fiduciary duty to a former client.  Finally, they assert that the Kansas legislature bars accounting negligence claims.

As to Defendants' first argument, Defendants attached 14 exhibits, totaling 464 pages, to their motion to dismiss.  These exhibits are documents, transcripts, depositions, and motions from the state trial between Ashley Clinic and Plaintiff.  Defendants contend that these exhibits demonstrate Plaintiff's consent to Reichert's adverse testimony.

K.S.A. § 1-401(b) provides:

---

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] Defendants also assert that Plaintiff's claims are barred by a two-year statute of limitations.  They withdrew this argument, however, after conceding that during the COVID pandemic, the Kansas Supreme Court's administrative orders suspended all statutes of limitations for approximately 13 months.  Thus, Plaintiff's claims are timely.

> No certified public accountant shall be examined through judicial process or proceedings without the consent of the client as to any communication made by the client to the certified public accountant in person or through the media of books of account and financial records, or as to advice, reports or working papers given or made thereon in the course of professional employment.

Defendants apparently want the Court to review the voluminous amount of exbibits to determine that Plaintiff consented to Reichert's testimony.  The Court declines to do so.  A motion to dismiss is pending before the Court.   And although the Court can take judicial notice of facts that are a matter of public record, the documents can "only be considered to show their contents, not to prove the truth of the matters asserted therein."[10]  Defendants attempt to prove, through these exhibits, the truth of the matter asserted that Plaintiff consented to Reichert's testimony.  Furthermore, consideration of the exhibits would require the Court to discount Plaintiff's allegations in his Complaint that Reichert failed to obtain his consent and Plaintiff was forced to examine him during trial.  The Court must take the facts in the Complaint as true and construe them in Plaintiff's favor.  Thus, the Court will not review the exhibits attached to Defendants' motion and finds this argument to be without merit.

Defendants next argue that there are no allegations of the existence of a contractual-based or an implied-by-law fiduciary duty between Plaintiff and Reichert.  They contend that Plaintiff fired Reichert in 2019, and there was no longer a fiduciary relationship between them when Reichert testified at trial.  Defendants argue that the Complaint merely complains that Plaintiff's former accountant testified adversely to him at trial.

---

[10] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quotation marks and citation omitted).

"[T]he essential elements of a breach of fiduciary duty claim are duty, breach, causation, and damages."[11]  "Whether a fiduciary relationship exists depends on the facts and circumstances of each case."[12]  Kansas recognizes two types of fiduciary relationships: (1) those specifically created by contract, such as principal and agent; and (2) those implied in law due to the facts surrounding the involved transactions and the parties' relationship.[13]

Defendants do not argue that a fiduciary relationship never existed between the parties. Instead, they contend that the fiduciary relationship ended in 2019, prior to Reichert's adverse testimony.   Yet, Plaintiff alleges that Reichert's adverse testimony was based, in part, on information he learned during the time he was acting as Plaintiff's personal accountant and was providing Plaintiff tax advice.  Plaintiff also alleges that Reichert told Plaintiff one thing when he was his accountant and testified to another thing when he was an expert witness at trial.  And Plaintiff contends that Reichert breached his fiduciary duty to him by not complying with Kansas statutes and regulations.  Thus, Plaintiff's allegations regarding Reichert's adverse testimony relate to information obtained during a time in which Plaintiff and Reichert had a fiduciary relationship and to information that allegedly should have remained confidential.   Construing Plaintiff's allegations in his favor, there appear to be factual questions surrounding the relationship between Plaintiff and Reichert, thus making this claim not amendable to disposition on a motion to dismiss.

---

[11] *Team Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, 2022 WL 16961237, at *12 (D. Kan. 2022) (quoting *Osage Cap., LLC v. Bentley Invs. of Nev. III, LLC*, 2014 WL 902189, at *7 (Kan. Ct. App. 2014)).

[12] *Dana v. Heartland Mgmt. Co.*, 48 Kan. App. 2d 1048, 1067, 301 P.3d 772, 785 (2013) (citing *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982)).

[13] *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1052-53 (D. Kan. 1990).

Accordingly, Plaintiff has stated a plausible breach of fiduciary duty claim, and the Court will not dismiss it.[14]

Finally, Defendants assert that Plaintiff's second claim—accounting negligence/malpractice—should be dismissed because it is barred by K.S.A. § 1-402. That statute provides:

> No person . . . or registered firm authorized to practice as a certified public accountant . . . shall be liable to any person . . . for civil damages resulting from acts, omissions, decisions or other conduct amounting to negligence in the rendition of professional accounting services unless:
>
> (a) [t]he plaintiff directly engaged such person . . . to perform the professional accounting services; or
>
> (b)(1) the defendant knew at the time of the engagement or the defendant and the client mutually agreed after the time of the engagement that the professional accounting services rendered the client would be made available to the plaintiff, who was identified in writing to the defendant; and (2) the defendant knew that the plaintiff intended to rely upon the professional accounting services rendered the client in connection with specified transactions described in writing.[15]

Defendants contend that neither exception is applicable. They argue that Plaintiff is suing Reichert for his expert testimony—not for Reichert's services when Reichert was Plaintiff's personal accountant. They assert that Reichert's expert testimony is not "professional accounting services" and even if it was, Plaintiff did not hire Reichert to testify nor was Plaintiff the intended third-party beneficiary of Reichert's expert testimony.

---

[14] The Court notes that the parties briefly address a Kansas Court of Appeals case decided in 1995. *See Morrison v. Watkins*, 20 Kan. App. 2d 411, 889 P.2d 140 (Kan. Ct. App. 1995). In that case, the Kansas Court of Appeals discussed the continuing representation rule and whether it tolled the statute of limitations on the plaintiff's breach of fiduciary duty claims. *Id.* at 144, 145-46. Because the Court is considering the facts as stated in Plaintiff's Complaint, and because *Morrison* does not directly address the ending of a fiduciary relationship in the context of the facts in this case, the Court declines to delve into the factual and legal implications of *Morrison* at this time.

[15] K.S.A. § 1-402.

Defendants' hyper-technical focus on Reichert's trial testimony misses the mark because they fail to acknowledge that Plaintiff alleges that Reichert's expert testimony was based at least, in part, on information Reichert obtained through his accounting services to Plaintiff.  Plaintiff alleges that he directly engaged Reichert to perform professional accounting services from 2005 through 2019.  As to those accounting services, Plaintiff alleges that Reichert filed tax returns for him for several years stating that his income was from self-employment.  And Plaintiff alleges that he was damaged by Reichert's testimony that Plaintiff was an employee of Ashley Clinic during the same time that Reichert filed tax returns for Plaintiff stating that Plaintiff was self-employed.  Thus, there are allegations that Reichert's acts, decisions, or other conduct amounted to negligence and caused Plaintiff civil damages.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's accounting/negligence malpractice claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 5) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 25th day of April, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE